IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEITH F. McCLOSKEY**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 02:03cv579 |
| | ) **Electronic Filing** |
| **RELIANCE STANDARD LIFE INSURANCE COMPANY**, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

March 16, 2006

**I.   INTRODUCTION**

Plaintiff, Keith F. McCloskey ("McCloskey" or "Plaintiff"), filed an amended complaint seeking to recover long-term disability ("LTD") benefits allegedly due under a group long term disability policy (the "Policy") purchased by McCloskey's employer, Interform Solutions, Inc. ("Interform"), from Defendant, Reliance Standard Life Insurance Company ("Reliance").  Because the Policy was part of an employee benefit plan established by Interform, McCloskey's claims are governed by the Employee Retirement Security Act ("ERISA").  McCloskey has asserted a claim for benefits, the imposition of fines and penalties, attorney fees, costs and such other relief that the Court deem equitable and just pursuant to 29 U.S.C. § 1132 (a), (e), and (f) of ERISA.  McCloskey also alleges that Reliance is in violation of 29 U.S.C. § 1133 and seeks a remand to the plan administrator for a full and fair review.  The parties have filed cross motions for summary judgment, and the motions are now before the Court.

**II.   STATEMENT OF THE CASE**

McCloskey was employed by Interform from April of 1981until December of 2000 when he ceased working claiming that he was disabled. (Administrative Record "AR" 126). During the times relevant for these motions, McCloskey was employed as a collator operator.

*Id.* As an employee of Interform, McCloskey was covered by the Policy which provided full time salaried employees with disability benefits if they were unable to work due to a disability for periods in excess of one hundred eighty (180) days. (AR, Exhibit A) McCloskey alleges that he ceased working due to medical conditions which he contends rendered him "disabled" under the Policy. (AR 126)

Under the Policy, "Totally Disabled" and "Total Disability" mean, that as a result of an injury or sickness:

1. During the 180 day period and for the first twenty-four (24) months for which a Monthly Benefit is payable, an Insured cannot perform the substantial and material duties of his/her regular occupation; and

2. After benefits have been paid for 24 months, an Insured cannot perform the substantial and material duties of any occupation that is one that the Insured's education, training, or experience will reasonably allow.

(Exhibit A p. 2.1). Any employee claiming total disability under the Policy must send written proof to Reliance within ninety (90) days after the alleged disability occurs. (Exhibit A p. 6.0). Pursuant to the employee benefit plan, Reliance serves as the claims review fiduciary with respect to the Policy. *Id.* Reliance, therefore, has discretionary authority to interpret the Policy to determine employee eligibility for benefits.

McCloskey stopped working on December 15, 2000, claiming disability due to abdominal pain. (AR 126). After receiving short term disability benefits for a period of time, McCloskey submitted a claim for LTD benefits under the Policy on July 12, 2001. *Id.* In his application, McCloskey described the nature of his illness as abdominal pain and a protrusion in the stomach area which rendered him too weak to perform his duties. *Id.* Plaintiff's treating physician, Howard Edington, M.D., submitted the "Physcian's Statement" and identified the primary diagnosis as a metastatic neuroendocrine tumor. (AR 322). Dr. Edington noted that McCloskey had an incisional hernia repair with mesh placement in January of 2001, and also reported Plaintiff's complaints of pain surrounding the mesh. *Id.* Further, Dr. Edington reported that a CT scan of McCloskey's abdomen and pelvis, performed on April 4, 2001, showed

"decreasing inflammation surrounding the mesh in the anterior abdominal wall consistent resolving post-op[erative] change." *Id.* Dr. Edington found "no evidence of fluid collect[ion] or infection." *Id.*

In addition to the medical findings, Dr. Edington reported on McCloskey's physical abilities. (AR 323). Dr. Edington reported that McCloskey could lift/carry on a medium work exertional level in an eight (8) hour work day. *Id.* At the time of his submission, June 27, 2001, Dr. Edington reported that Plaintiff had not yet reached maximum medical improvement, but full recovery was expected in three (3) to four (4) months. *Id.*

Interform, McCloskey's employer, was also required to provide information to Reliance as part of the claim process. In an "Occupational Analysis" form provided by Reliance, Interform confirmed that McCloskey last worked as a collator operator on December 15, 2000. (AR122). Moreover, Interform provided Reliance with the following requested physical requirements of Plaintiff in his capacity as collator operator: (1) continuously required to stand and walk; (2) occasionally required to sit and balance; (3) frequently required to stoop, kneel, crouch, reach overhead; (4) frequently required to pull, push and lift in excess of 150 pounds; and (5) never required to crawl or climb stairs or ladders. (AR 124). Interform also reported that a helper could be used to assist Plaintiff in performing his occupation, when available. (AR 125).

In reviewing McCloskey's claim, Reliance considered all the medical records that were provided. The records indicate that Plaintiff had no health problems until February of 1999. (AR 252). In February of 1999, McCloskey consulted with Michael Wong, M. D. regarding a neuroendocrine tumor of the pancreas. *Id.* A Whipple procedure, which generally involves the removal of the gallbladder, common bile duct, part of the duodenum, and the head of the pancreas, was performed on May 12, 1999. *Id.* Following the surgery, Dr. Wong reported that McCloskey achieved his full activities of daily living by June 24, 1999. (AR 255). Subsequently, however, McCloskey developed significant abdominal pain due to a perforated

viscus. McCloskey then underwent surgery to repair a perforated jejunal ulcer on August 17, 1999. (AR 165).

In June of 2000, a CT scan of McCloskey's abdomen, chest and pelvis revealed an enlarging complex mass. (AR 295). Plaintiff was treated with antibiotics, and a biopsy was performed on June 16, 2000. (AR 297). The biopsy specimen was not optimal and did not provide a definitive diagnosis. *Id.* In his Progress Note Report dated August 28, 2000, Dr. Wong indicated that Plaintiff was doing well and continued to work full time. (AR 266). A CT scan performed on October 24, 2000, revealed no evidence of metastatic disease in the chest or pelvis. (AR 269). McCloskey continued to work full time, but indicated to Dr. Wong that, occasionally after lifting heavy objects at work, he felt a burning-like sensation across his incision. (AR 268).

In December of 2000, three days after he stopped working, McCloskey went to Dr. Wong to have a bulge in his mid-abdomen examined. (AR 304). McCloskey also indicated to Dr. Wong that he does significant heavy lifting at work, and that he was experiencing slight pain with the lifting. (AR 306). At that time, McCloskey was diagnosed with an incisional hernia and scheduled for surgery on January 2, 2001. (AR 307). McCloskey's incisional hernia was surgically repaired, requiring the insertion of a polypropylene mesh. (AR 309).

Though his postoperative recovery was complicated by a wound infection, McCloskey resumed many of his normal activities by March 14, 2001. *Id.* McCloskey complained, however, of pain at the site of the operation that occurred during bending. *Id.* CT scans of his chest, pelvis and abdomen during this period revealed no evidence of a tumor or metastatic disease. (AR 310). McCloskey continued, however, to report abdominal pain through May 14, 2001. (AR 207).

In his Progress Note Report dated July 16, 2001, Dr. Wong indicated that McCloskey suffered from severe abdominal pain with any kind of physical activity that required bending. (AR 310). Dr. Wong further reported that there was no evidence of a recurrence of his tumor.

*Id.* Dr. Wong then completed a physician's report for Reliance, dated September 4, 2001, in which he reported that: (1) there was no evidence of cancer; (2) it was anticipated McCloskey could return to work in three (3) to six (6) months; and (3) because of extensive abdominal hernia repair, job modification was required in that McCloskey was unable to lift more than ten (10) pounds or take part in strenuous activity. (AR 289).

Despite the September 4, 2001, report from Dr. Wong, Reliance denied McCloskey's claim for LTD benefits by letter dated September 21, 2001. (AR 101). The decision was based on a review of medical records that were submitted by Joshua Rubin, M.D. and Dr. Wong from which Reliance concluded that McCloskey retained the physical capacity to perform the required light-duty work of a collator operator. (AR 102). McCloskey was advised of his right to appeal, and he did so on September 27, 2001. (AR 86). In his letter of appeal, McCloskey contended that the denial of LTD benefits was incorrect as Reliance had not reviewed the medical records of neither John Kane, M.D., nor Dr. Edington, both of whom were treating McCloskey at the time. *Id.*

In its review, Reliance requested additional information from Dr. Kane. (AR 245). Dr. Kane provided Reliance with an assessment which stated that McCloskey "has chronic abdominal pain secondary to a mesh repair of an incisional hernia on [January 1, 2001] (which became infected postoperatively)." *Id.* The assessment further suggested that McCloskey have the mesh removed before he returned to work, and that he be restricted in his occupational duties from any lifting and/or movement that produced an increase in pain. *Id.*

Dr. Edington noted in his Outpatient Chart Note dated October 15, 2001, that Plaintiff was unable to work because the prosthetic meshes "have been intermittently extruded and infected" causing chronic abdominal pain. (AR 185). McCloskey was also made aware of the risks involved with the removal of the mesh and reconstruction. *Id.* There was a possibility that the surgical incisions could ultimately result in a permanent opening through the abdominal wall into the intestine and the need for a colostomy that may not be reversible. *Id.*

Moreover, Dr. Edington warned Plaintiff that the removal of the mesh and reconstruction may not alleviate his pain and weakness, and may result in recurrent hernias. (AR 196). Despite these dire warnings, McCloskey wanted Dr. Edington to proceed with exploration of the abdominal wound, removal of the mesh and reconstruction of the abdominal wall. (AR 185). The surgery was scheduled for November 7, 2001. *Id.*

By letter dated November 8, 2001, Reliance reversed its denial of LTD benefits and reinstated benefits retroactively to June 14, 2001. (AR 82). Based upon an expected recovery period for the surgery of six weeks, Reliance indicated that the claim for LTD benefits would be paid until December 20, 2001 and then closed. *Id.* Reliance further informed McCloskey that:

> If there are medical reasons why you could not return to work after December 20, 2001, please have your Attending Physician submit documentation supporting your inability to perform your occupation. Upon receiving additional information, we will review your file to determine whether benefits are payable.

*Id.* Such additional information included Dr. Edington's Outpatient Chart Note dated November 19, 2001, which indicated that McCloskey was reporting excellent progress, experiencing some post-surgical discomfort but that the original discomfort that mitigated the surgery was completely resolved. (AR 184). Dr. Edington recommended no heavy lifting for a full twelve (12) weeks postoperatively. *Id.* Additionally, Reliance received an in-house medical review dated December 12, 2001, which noted that the twelve (12) week limitation was reasonable given McCloskey's history. (AR 172).

On December 17, 2001, Reliance advised McCloskey that LTD benefits had been extended through January 31, 2002, to allow for the full twelve week limitation and recovery. (AR 19). Reliance advised, however, that the benefits were to be discontinued after that date and provided McCloskey with notice of his right to appeal. *Id.* Reliance then received additional medical records.

After Dr. Edington referred him back to the Pittsburgh Cancer Institute, McCloskey visited with Dr. Wong on January 28, 2002. (AR 168). McCloskey complained of new

6

symptoms consisting of a racing heart, facial flushing, nausea, sweating, and generalized body tightness. *Id.* These symptoms seemed to occur about once per week, and had been occurring over the past several months. *Id.* Dr. Wong ordered additional testing. (AR 169). A follow-up visit on February 25, 2002, revealed that McCloskey's neurological exam was grossly intact, that his heart and musculoskeletal systems were normal, and that there was no explanation for the flushing and sweating he was experiencing. (AR 165-166). Dr. Wong scheduled McCloskey for repeat evaluation in six months. *Id.*

By letter dated April 17, 2002, McCloskey requested that Reliance reopen his file and advised that he was now being treated by Scott T. Phillips, M.D. (AR 67). Dr. Phillips indicated that McCloskey was still off work because of nausea, abdominal pain associated with physical activity, hot flashes, numbness and tingling over his entire body. *Id.* Reliance contends that the request to reopen the file was submitted two (2) months after the sixty (60) day appeal period had expired. Moreover, Reliance advised McCloskey on February 14, 2002, that he would be permitted to submit additional information, however, as of April 23, 2002, no such information had been submitted. Later, McCloskey provided Reliance with an office note from Stuart Tauberg, M.D. dated May 1, 2002, which indicated that a stress echocardiogram was performed on McCloskey and was negative for ischemia or infarction. (AR 161-162). Based on those results, Dr. Tauberg concluded that there was a "low probability of hemodynamically significant coronary disease." (AR 161).

Reliance requested another in-house medical review, and on May 28, 2002, it was reported that McCloskey's medical records did not support impairment beyond the twelve (12) week post-operative period, or until January 31, 2002. (AR 151). The in-house review noted that neither McCloskey's cardiac stress test, nor the report of Dr. Phillips would impair him from the medium exertion work level. *Id.*

Reliance then sent McCoskey's records to William Hauptman, M.D., for a physician review. (AR 150). In his review, Dr. Hauptman found: (1) McCloskey's symptoms should not impair him from light work; (2) there was no evidence of cancer; (c) the CT scan and 24 hour

urine evaluation were negative; and, (4) the cardiac evaluation was negative. *Id.*

On June 10, 2002, Reliance issued a final determination denying McCloskey's claim for continued LTD benefits based on the fact that his pancreatic cancer was in remission, he had recovered from the November 8, 2001 surgery, and that total disability could not be based upon complaints of facial flushing and hot flashes. (AR 3-5). Moreover, Dr. Hauptman's review indicated that these symptoms would not impair him from light duty work. (AR 5). Using the U.S. Department of Labor's *Dictionary of Occupational Titles* (DOT 653.382-014) definition of Collator Operator as light duty work[1], Reliance determined that McCloskey was capable of performing his past work and was no longer totally disabled as defined by the Policy. *Id.* McCloskey again requested an appeal, however, Reliance determined that he had exhausted his administrative remedies, and the appeal was denied. (AR 1).

McCloskey asserts that his employer's report of his job duties reflected that he performed heavy duty work involving pushing, pulling, lifting and carrying up to 150 lbs frequently. In addition, McCloskey submitted additional medical reports to Reliance on April 7, 2003, from Dr. Phillips, Dr. Wong, Linda King, M.D. and Ellen Ormond, Ph.D., each of which indicated that McCloskey was experiencing chronic pain and depression as a result of his previous surgeries and was unable to return to work.

### III.   STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty*

---

[1]   The physical demands of a collator operator as set forth in the DOT are defined as occasionally lifting up to twenty (20) pounds and frequently lifting up to ten (10) pounds.

*Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well.  *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c),  its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

In reviewing a denial of benefits under an ERISA benefit plan, a Court must first determine whether the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 114-115 (1989).  Where the benefit plan gives the administrator or fiduciary authority the discretion to determine eligibility for benefits or to construe the terms of the plan, the denial of benefits is reviewed under the arbitrary and capricious standard. *Id.*; *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437-438 & n.4 (3d Cir. 1997).

Under the arbitrary and capricious standard of review, a district court may overturn a decision of a plan administrator only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffmann-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)(citing *Adamo v. Anchor Hocking Corp.*, 720 F. Supp. 491, 500 (W.D. Pa.

1989)). A decision is supported by "substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision." *Daniels v. Anchor Hocking Corp.*, 758 F. Supp. 326, 331 (W.D. Pa. 1991). Moreover, under this narrow scope of review a court is not free to substitute its own judgment for that of the administrator in determining eligibility for plan benefits. *Abnathya v. Hoffman-La, Inc.*, 2 F.3d at 45.

When an insurance company, however, both funds and administers benefits, "it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000). When applying a heightened arbitrary and capricious standard, district courts must use a "sliding scale" approach, "calibrating the intensity of our review to the intensity of the conflict." *Id.* at 393. This approach allows the court to "take notice of discrete factors suggesting that a conflict may have influenced the administrator's decision." *Id.* The courts should consider not only the reasonableness of the result, but also the process by which the result was achieved. *Id.* at 393. "Suspicious events" and "procedural anomalies" raise the likelihood of self-dealing and move the review toward the stricter extreme of the arbitrary and capricious range. *Id.* at 394.

The parties agree that the Policy grants Reliance the discretion to make eligibility determinations and to interpret the terms of the policy. Therefore, the heightened arbitrary and capricious standard applies, requiring a sliding scale analysis to determine the degree of scrutiny of Reliance's determination.

IV.  **DISCUSSION**

  A. <u>Reliance's Failure to Review Certain Records</u>

McCloskey first argues that the deference owed to Reliance's broad discretion in its determination of his right to benefits under the Policy must be diminished based upon its failure to obtain and consider the file from the Social Security Administration ("SSA") which granted McCloskey benefits under the Social Security Act. The Court finds this argument to be

without merit.

Because the Policy places the burden on the claimant to submit medical evidence to support eligibility for benefits, it was McCloskey's responsibility to substantiate his claim that his medical condition caused total disability. *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 46 (3d Cir. 1993). Reliance had no affirmative duty to seek the records from the SSA. If such records were critical to McCloskey's claim, it was his burden to provide such to Reliance.

McCloskey further argues that the medical reports from Dr. Phillips, Dr. Wong, Dr. King, and Ellen Ormond, Ph.D., each of which indicated that McCloskey was unable to return to work, submitted to Reliance on April 7, 2003, should have been reviewed and considered by Reliance. Again, the Court finds this argument to be without merit.

Reliance prospectively denied McCloskey LTD benefits beyond January 31, 2002, by letter dated December 17, 2001. In the letter, McCloskey was properly provided with notice of his right to have this denial reviewed, and such request was required to be sent to Reliance "within 60 days of receipt of this letter." McCloskey, however, did not request a review until April 17, 2002, when he asked Reliance to reopen his file. Though this request was beyond the sixty (60) day appeals period, Reliance again reviewed documents submitted by McCloskey, requested another in-house medical review, and sent his records to Dr. Hauptman for a physician review.

Reliance issued a final determination denying McCloskey's claim for continued LTD benefits on June 10, 2002, thus exhausting McCloskey administrative remedies. Reliance had no duty to review documents submitted thereafter. It is fundamental that in reviewing Reliance's decision to deny Plaintiff LTD benefits, this Court is limited to reviewing only that evidence that was before Reliance at the time the decision was made. *See Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136, 142 (3d Cir. 2000); *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d at 377. McCloskey's contention that Reliance should have reviewed medical records submitted nearly a year after a final determination was made is therefore without merit.

  B. <u>McCloskey's Claim for Disability Benefits Under the Policy</u>

In order to properly evaluate the merits of McCloskey's claim for benefits under the Policy, the Court must analyze: (1) the medical documentation in support of McCloskey's physical disability; (2) Reliance's rationale for refusing to find that this evidence rendered McCloskey "totally disabled" within the meaning of the Policy[2]; and (3) whether Reliance's rationale for denying benefits is supported by the record and in accord with controlling precedent of the Third Circuit.

Reliance informed Plaintiff by letter dated December 17, 2001, that his benefits would be discontinued on January 31, 2002, based upon Dr. Edington's Outpatient Chart Note dated November 19, 2001, advising McCloskey that he completely avoid heavy lifting for twelve (12) weeks. Reliance, interpreting this note as releasing Plaintiff for **heavy** exertional activity as of that date, did in fact cease paying McCloskey LTD benefits under the Policy on January 31, 2002.

In May of 2002, however, a Reliance in-house medical-vocational noted that McCloskey's condition would not impair him from working at the **medium** exertion level. After physician review of McCloskey's medical records by Dr. Hauptman, he found that McCloskey's symptoms should not impair him from **light** work. In its final determination, Reliance relied upon DOT 653.382-014 to define McCloskey's regular occupation as a collator operator as **light** duty work. The definition of Plaintiff's regular occupation as "light duty work" is in direct conflict with Interform's description of the physical requirements of his position in the "Occupational Analysis" form[3] provided by Reliance. Because Reliance's

---

[2]   In Paragraph 19 of the Amended Complaint, Plaintiff avers that he is disabled not only from his "regular occupation," but also from "any occupation" as set forth on page 2.1 of the Policy. Benefits under the Policy were discontinued during the "regular occupation" period of the Policy, and Reliance was not required to conduct a review under the more stringent "any occupation" standard. As such, LTD benefits beyond the twenty-four (24) month disability period relative to Plaintiff's "regular occupation" are not before this Court.

[3]   Interform indicated that one of the physical requirements of Plaintiff in his capacity as collator operator was that he was frequently required to pull, push and lift in excess of 150 pounds.

evaluation of McCloskey's regular occupation as a light exertional level job appears to be both inconsistent and self-serving, this Court will move down the scale of review toward the stricter extreme of the arbitrary and capricious range.

Reliance argues that it properly classified McCloskey's position as a light duty level occupation[4]. Moreover, Reliance argues that the formal job description provided by Interform did not identify a duty to lift 150 pounds. Interform specifically identified the duties of Plaintiff's regular occupation as collator operator as follows:

1. Project a good attitude and follow procedures;
2. Possess thorough knowledge of product and usage;
3. Possess complete understanding of machine operation and safety;
4. Ability to perform advanced maintenance on machine;
5. Expected to keep equipment and work station neat and orderly at all times; and
6. Responsible for reviewing Material Safety Data Sheets and following safety procedures in place for the use of hazardous chemicals.

The required skills, abilities and qualifications of Plaintiff's position were listed as follows:

1. Must possess good math skills and be able to read a ruler;
2. Know how to read and understand orders;
3. Good common sense;
4. Possess excellent knowledge and good skills on all aspects of printing;
5. Must be physically able to perform all job duties of position.

(AR 55). What is obvious by their absence from the corporate job description, however, are the actual physical exertional requirements for the position of collator operator. To determine such requirements, Reliance chose to ignore the physical requirements specifically set forth by Interform on the "Occupational Analysis" form supplied to the employer by Reliance, and substituted the definitions set forth in the DOT. Not only was such classification arbitrary in this instance, it was contrary to the precedent of the Court of Appeals of the Third Circuit.

---

[4] Reliance also argues that Plaintiff waived this issue by failing to raise it at the administrative level. Reliance, however, fails to cite to any authority regarding waiver in this instance. Notwithstanding Plaintiff's failure to raise the issue administratively, the issue was glaringly obvious to this Court upon review of the record. In determining whether Reliance was arbitrary and capricious in its analysis, a critical issue is its classification of Plaintiff's "regular occupation," and would have been reviewed by the Court in due course.

Under the explicit terms of the Policy, McCloskey is totally disabled, for the first twenty-four (24) months for which a "Monthly Benefit" is payable, if he "cannot perform the substantial and material duties of [his] regular occupation." To determine whether Reliance correctly decided that Plaintiff did not qualify for disability benefits, we first determine what his "regular occupation," because the Policy fails to define the term.

In *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381 (3d Cir. 2003), the Third Circuit detailed the analysis to be followed in ERISA cases in addressing a benefits policy that failed to define "regular occupation," and offered the following definition: "'Regular occupation' is the usual work that the insured is actually performing immediately before the onset of disability." *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d at 286. Relying heavily on the fact that the insurer had not defined "regular occupation" in the policy, the court in *Lasser* found that the "common sense" understanding of "regular occupation" should apply, stating "it is unreasonable for Reliance to define 'regular occupation' differently from its plain meaning . . . without explicitly including that different definition in the Policy."*Id.* at 386-387.

Applying the Third Circuit's definition, therefore, McCloskey's "regular occupation"must be determined with reference to specific duties performed for his employer, and not to the generic definition set forth in the DOT. Those duties are set forth in "Corporate Job Description" and Reliance's "Occupational Analysis" form. One of the qualifications set forth by Interform for the position of collator operator was that McCloskey must be physically able to perform all job duties of position. Interform then specifically listed those physical requirements on Reliance's "Occupational Analysis" form: (1) continuously required to stand and walk; (2) occasionally required to sit and balance; (3) frequently required to stoop, kneel, crouch, reach overhead; (4) frequently required to pull, push and lift in excess of 150 pounds; and (5) never required to crawl or climb stairs or ladders. Therefore, any analysis regarding Plaintiff's ability to perform the substantial and material duties of his regular occupation must include the frequent lifting of 150 pounds, and cannot be limited to the requirements of a "light duty" level occupation.

Reliance argues that even if it had classified Plaintiff's occupation as a heavy exertion level occupation, Plaintiff would not be entitled to benefits because his physician "cleared" him to perform heavy lifting twelve weeks following his surgery on November 7, 2001, for removal of the prosthetic mesh and reconstruction of his abdominal wall.  Reliance bases this contention on its unilateral interpretation of a single Outpatient Chart Note written by Dr. Edington dated November 19, 2001.  Dr. Edington's note, however, did not "clear" Plaintiff for heavy lifting. In his note, Dr. Edington stated: "I will see {Plaintiff} again in two weeks and have recommend [sic] no heavy lifting for a full 12 weeks postoperatively."  The Court can find nothing in Dr. Edington's note that clears Plaintiff for frequent pushing, pulling, lifting or carrying 150 pounds or more.

It is fundamental that a court must examine the entire record to determine whether an administrator's determination to deny disability benefits is supported by substantial evidence. *See Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d  at 388-389;  *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d at 387. After a comprehensive review of the record that was before Reliance when it finally denied McCloskey's claim for continued LTD benefits in June of 2002, this Court is unable to find any evidence that McCloskey was cleared to return to work at the exertion level  required for him to perform the substantial duties of his regular occupation.  Moreover, McCloskey's complaints regarding abdominal pain were consistent throughout the relevant period and supported by objective medical evidence.

As set forth more fully above, McCloskey was initially diagnosed with pancreatic cancer and underwent his first surgery on May 12, 1999.  Thereafter, Plaintiff developed significant abdominal pain due to a perforated viscus, and underwent his second surgery to repair a perforated jejunal ulcer in August of 1999.  In June of 2000, McCloskey developed a complex mass in his abdomen which was treated with antibiotics while he continued to work full time.  During that time, Plaintiff complained to Dr. Wong, that he felt a burning sensation across his surgical incision after lifting heavy objects at work.

McCloskey stopped working on December 15, 2000, claiming disability due to

abdominal pain. Three days later, McCloskey went to Dr. Wong to have a bulge in his mid-abdomen examined. He advised Dr. Wong that he did significant heavy lifting at work, and was experiencing slight pain with the lifting. McCloskey was diagnosed with an incisional hernia and had his third abdominal surgery on January 2, 2001. The repair of McCloskey's incisional hernia required the insertion of a polypropylene mesh. His recovery from the surgery was complicated by a wound infection.

Though he resumed many of his normal activities by March 14, 2001, McCloskey complained of severe abdominal pain, with any kind of physical activity that required bending, through July 16, 2001. Tellingly, in September of 2001, Dr. Wong completed a physician's report for Reliance that anticipated McCloskey's return to work in three (3) to six (6) months, but, because of extensive abdominal hernia repair, specifically noted that job modification was required for such return. Dr. Wong informed Reliance that McCloskey was unable to lift more than ten (10) pounds or take part in any strenuous activity.

Dr. Kane, also in the Fall of 2001, provided Reliance with an assessment which stated that McCloskey "has chronic abdominal pain secondary to a mesh repair of an incisional hernia . . ." and restricted McCloskey in his occupational duties from any lifting and/or movement that produced an increase in pain. On November 7, 2001, McCloskey underwent his fourth surgery for removal of the mesh and reconstruction of the abdominal wall. Prior to the surgery, Dr. Edington warned Plaintiff that the removal of the mesh and reconstruction may not alleviate his pain and weakness, and could in fact result in recurrent hernias.

Subsequent to this surgery, the only evidence that Plaintiff could return to work came from two (2) sources: (1) a Reliance in-house review dated May 28, 2002, that indicated McCloskey was not impaired from medium exertion level work; and (2) a physician review by Dr. Hauptman that indicated McCloskey was not impaired from light work. Based upon Interform's formal job description and the "Occupational Analysis" form, neither of these reports are evidence that McCloskey was capable of performing the substantial and material duties of his regular occupation as collator operator. Moreover, the Court finds that Reliance's

decision to deny McCloskey LTD benefits failed to consider the full scope of McCloskey's four (4) surgeries, and is otherwise unsupported by substantial evidence of record.

The Court finds objective evidence in the record that McCloskey did in fact perform heavy lifting in his occupation. Further, Plaintiff's complaints of abdominal pain were consistent throughout the relevant period and supported by objective medical evidence. Therefore, McCloskey is entitled to the benefits due and owing to him for the remainder of the twenty-four month benefit period under the Reliance Long Term Disability Policy as it relates to Plaintiff's inability to perform the substantial and material duties of his regular occupation. This ruling is without prejudice to McCloskey to file an application for disability benefits with Reliance based upon his alleged inability to "perform the substantial and material duties of any occupation that is one that the [Plaintiff's] education, training, or experience will reasonably allow."

With regard to Count II of McCloskey's complaint, the Court finds that McCloskey's contention that Reliance violated reporting and disclosure requirements of ERISA is without merit[5].

---

[5] The Court agrees that the claims in Count II are governed by a Section 502(c) of ERISA, 29 U. S. C. § 1132(c), and such claim fails against Reliance.

**IV.    CONCLUSION**

Based on the foregoing, the Court finds that the decision of Reliance to deny McCloskey's claim for LTD benefits under the Policy was arbitrary and capricious under the heightened standard of review.  Reliance, however, was not in violation of 29 U.S.C. § 1133.  Reliance's motion for summary judgment will be denied in part and granted in part, and McCloskey's motion for summary judgment will be denied in part and granted in part.  An appropriate order follows.

                                                        s/David Stewart Cercone
                                                        David Stewart Cercone
                                                        United States District Judge

cc:    Raymond J. Seals, Esquire
       660 U.S. Steel Tower
       600 Grant Street
       Pittsburgh, PA 15219

       Joshua Bachrach, Esquire
       Keithley D. Mulvihill, Esquire
       Rawle & Henderson, LLP
       The Henry W. Oliver Building
       535 Smithfield Street, Suite 910
       Pittsburgh, PA 15222

       Angela Heim, Esquire
       Rawle & Henderson LLP
       The Widener Building
       One South Penn Square
       Philadelphia, Pennsylvania 19107